# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MICHAEL C. MUSTACHE,

        Plaintiff,

v.                                                                                         Case No. 09-C-18

J. JOHNSON, PETER ERICKSEN,
and LT. VAN GHEEM,

        Defendants.

## DECISION AND ORDER

The plaintiff, who is incarcerated at Green Bay Correctional Institution (GBCI), filed a *pro se* civil rights complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before the court on the plaintiff's motion for leave to proceed *in forma pauperis* and for screening of the plaintiff's complaint.

The plaintiff is required to pay the statutory filing fee of $350.00 for this action. *See* 28 U.S.C. § 1915(b)(1). If a prisoner does not have the money to pay the filing fee, he can request leave to proceed *in forma pauperis*. The plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. § 1915(a)(2), and has been assessed and paid an initial partial filing fee of $3.37. The court will grant the plaintiff's motion for leave to proceed *in forma pauperis*.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the

prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To avoid dismissal for failure to state a claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). It is not necessary for the plaintiff to plead specific facts; his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (citations omitted). In deciding whether the complaint states a claim, the court must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). There is no heightened pleading requirement for pro se prisoner civil rights complaints. *Thomson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004). Of course, if a

complaint pleads facts that show that a plaintiff does not have a claim, the complaint should be dismissed "without further ado." *Id.* at 970.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege: (1) that he or she was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was visited upon the plaintiff by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's pro se allegations, "however inartfully pleaded," a liberal construction. *See Erickson*, 127 S. Ct. at 2200 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Attached to the plaintiff's complaint are all of the administrative documents regarding the charges against him. These include the Adult Conduct Report, including the Security Director's Review, the Disciplinary Hearing Reasons for Decision and Evidence Relied On form, and the Appeal of Adjustment Committee or Hearing Officer's Decision form. Attachments to the complaint become a part of the complaint, and the court may consider those documents in ruling on a motion to dismiss.[1] *Witzke v. Femal*, 376 F.3d 744, 749 (7th Cir. 2004) (citing *Tierney v. Vahle,* 304 F.3d 734, 738 (7th Cir.2002)). Screening a prisoner's complaint imposes the same standard as a motion to dismiss. Therefore, the attachments are properly considered at screening.

---

[1] Pursuant to Fed. R. Civ. P. 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

According to the plaintiff's sworn complaint, J. Johnson "maliciously" issued him a conduct report on October 11, 2008, for fighting with an inmate named Vasquez, even though there was no evidence that Mustache participated in a fight. On October 21, 2008, Peter Ericksen, upon his review of the conduct report, could have suppressed the fighting charge, but instead chose to upgrade and approve the charged violation to a major offense penalty on false pretenses that Mustache's alleged conduct created a risk of serious disruption at the institution and created a risk of serious injury to another person. Mustache avers that Ericksen upgraded the charges to a major offense "with malice and specific intent to injure Mustache in order to support his subordinate's [defendant J. Johnson] unlawful disciplinary action." (Complaint, ¶5). Mustache further affirms that Ericksen "was aware from the report that there was no evidence that Mustache participated in a fight." *Id.*

On October 24, 2008, Mustache was taken before a disciplinary hearing officer, defendant Lt. Van Gheem, who found Mustache guilty of fighting and imposed 180 days of disciplinary separation in segregation. Mustache avers that Van Gheem took this action "with malice and specific intent to harm Mustache and did so, although no evidence was presented at the hearing that Mustache participated in a fight with Inmate Vasquez." (Complaint, ¶6). Mustache submits that this violated the standard for guilt required by DOC 303.76[6-b].

Mustache timely filed an appeal with William Pollard, the GBCI warden, on October 29, 2008, challenging the hearing officer's reason for decision because

there was no evidence that he participated in a fight with inmate Vasquez. On November 14, 2008, Pollard reversed the hearing officer's decision in whole and stated: "No evidence to support this inmate participated in a fight." (Complaint, ¶8). That day, Mustache was released from the GBCI segregation unit to the prison's general population.

The plaintiff seeks compensatory and punitive damages "for the anxiety, frustration, and mental anguish Mustache sustained as a result of the unlawful Major Disciplinary proceedings instituted against him." (Complaint, ¶10). He avers that the defendants' actions violated his Eighth and Fourteenth Amendment rights.

Although the plaintiff cites the Eighth and Fourteenth Amendments, the nature of his claim (or claims) is not entirely clear. The bottom line is that the plaintiff is seeking monetary damages for the thirty-five days he spent in segregation between the conduct report on October 11, 2008, and November 14, 2008, when the warden reversed the hearing officer's decision.

The plaintiff may be proposing a due process claim under the Fourteenth Amendment. In order to state a due process claim, the plaintiff must have a protected liberty interest in remaining in the general population of the prison. "The Constitution itself does not create an interest in avoiding transfer within a correctional facility." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (citing *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005) and *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). However, the Supreme Court has established that disciplinary

segregation can trigger due process protections depending on the duration and conditions of segregation. *Marion v. Columbia Correctional Institution*, 559 F.3d 693, 697 (7th Cir. 2009) (240 days of segregation was sufficiently long to implicate a cognizable liberty interest if the conditions of confinement during that period were sufficiently severe). In contrast, "[i]n some cases, [the Seventh Circuit] has described an inmate's liberty interest in avoiding segregation as very limited or even nonexistent." *Id.*

In this case, the plaintiff received a disposition of 180 days in segregation, but he served only 35 days in segregation. Thus, the court must consider whether thirty-five days in segregation gives rise to a liberty interest. The Seventh Circuit has held that "inmates have no liberty interest in avoiding placement in discretionary segregation." *Townsend*, 522 F.3d at 766, 772 (prisoner segregation term of 59 days). Nor are due process concerns raised when a prisoner spends 60 days in segregation, among other punishments, as a result of his disciplinary conviction. *Hoskins v. Lenear*, 395 F.3d 372, 374-75 (7th Cir. 2005). The court concludes that the plaintiff's 35 days in segregation does not give rise to a liberty interest protected by the Fourteenth Amendment.

Moreover, in many of the recent cases regarding liberty interests, it was undisputed that the respective plaintiffs had received no due process regarding their removal from the general population. *Marion*, 559 F.3d at 695; *Townsend*, 522 F.3d at 770; *Gillis v. Litscher*, 468 F.3d 488, 491-91 (7th Cir. 2006). Conversely, here, the

plaintiff has detailed the process he received in his complaint. In fact, the process the plaintiff received was so effective that the warden's review resulted in a reversal of the hearing officer's decision and the plaintiff's release back to the general population after only 35 days (of an 180-day disposition). Thus, the plaintiff fails to state a claim under the Fourteenth Amendment.

It is also possible that the plaintiff could be asserting an Eighth Amendment claim that being charged with a crime without evidence to support the charges constitutes cruel and unusual punishment. The Eighth Amendment prohibits cruel and unusual punishment and applies to the states through the Due Process Clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660 (1962). As discussed above, "[t]he Constitution itself does not create an interest in avoiding transfer within a correctional facility." *Townsend*, 522 F.3d at 771. Because the plaintiff's 35 days in segregation do not give rise to a liberty interest, his placement there is not actionable under the Eighth Amendment.

In the criminal context, every individual whose conviction is overturned on appeal is not entitled to monetary damages. Similarly, the plaintiff is not entitled to compensation simply because the warden chose to reverse the hearing officer's decision. The plaintiff's complaint fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2).

Accordingly,

**IT IS ORDERED** that the plaintiff's motion for leave to proceed *in forma pauperis* (Docket #2) be and is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has brought an action that was dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. §1915(g).

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $346.63 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10.00 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**IT IS ALSO ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

Dated at Milwaukee, Wisconsin, this 16th day of June, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge